IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAMONT M. GIBSON, SR., | : |
| | : |
| Plaintiff | : |
| | : |
| v. | : CIVIL NO. 4:CV-16-514 |
| | : |
| K. SMITH, ET AL., | : (Judge Brann) |
| | : |
| Defendants | : |

**MEMORANDUM**

April 19, 2016

**Background**

Lamont M. Gibson, Sr., an inmate presently confined at the Mahanoy State Correctional Institution, Frackville, Pennsylvania (SCI-Mahanoy) filed this pro se civil rights complaint. Plaintiff has also submitted an in forma pauperis application.[1]

Named as Defendants are the following three (3) SCI-Mahanoy officials: Correctional Officer K. Smith; Hearing Examiner S. L. Hex; and Deputy Superintendent Michael Vuksta. According to the sparsely worded Complaint, Plaintiff was issued a misconduct by Defendant Smith on November 30, 2015. Gibson admits that this disciplinary charge was issued as the result of a verbal

---

[1] Gibson has completed this Court's form application to proceed in forma pauperis and authorization to have funds deducted from his prison account.

1

argument he had with a fellow inmate. However, Plaintiff contends that since he only "verbally defended" himself after being threatened with violence by the other prisoner, Correctional Officer Smith accepted improperly by only charging him and not the other inmate. Doc. 1, ¶ IV(1). It is next asserted that Hearing Examiner Hex violated Plaintiff's due process rights by accepting Smith's written account of the incident without further investigation and by denying his request for a witness.[2] As relief, Plaintiff seeks immediate or speedier release from confinement, reinstatement of parole privileges, expungement of the misconduct, and disciplinary action against Defendants Smith and Hex.

**Discussion**

Title U.S.C. § 1915 imposes obligations on prisoners who file civil actions in federal court and wish to proceed in forma pauperis under 28 U.S.C. § 1915, e.g., that the full filing fee ultimately must be paid (at least in a non-habeas suit) § 1915(e)(2) provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

---

[2] The Complaint does not specify what sanctions were imposed by the Hearing Examiner as a result of the finding of guilt.

A district court may rule that process should not be issued if the complaint is malicious, presents an indisputably meritless legal theory, or is predicated on clearly baseless factual contentions.  Neitzke v. Williams, 490 U.S. 319, 327-28 (1989); Douris v. Middleton Township, 293 Fed. Appx. 130, 132 (3d Cir. 2008). Indisputably meritless legal theories are those "in which either it is readily apparent that the plaintiff's complaint lacks an arguable basis in law or that the defendants are clearly entitled to immunity from suit ... ."  Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990) (quoting Sultenfuss v. Snow, 894 F.2d 1277, 1278 (11th Cir. 1990)).

The United States Court of Appeals for the Third Circuit has added that "the plain meaning of 'frivolous' authorizes the dismissal of in forma pauperis claims that . . . are of little or no weight, value, or importance, not worthy of serious consideration, or trivial."  Deutsch v. United States, 67 F.3d 1080, 1083 (3d Cir. 1995).  It also has been determined that "the frivolousness determination is a discretionary one," and trial courts "are in the best position" to determine when an indigent litigant's complaint is appropriate for summary dismissal.  Denton, 504 U.S. at 33.

**Injunctive Relief**

3

As partial relief, Gibson seeks either his immediate or speedier release and expungement of the misconduct. Prisoners challenging the duration of their confinement or seeking earlier or speedier release must assert such claims in a properly filed habeas corpus action. Preiser v. Rodriguez, 411 U.S. 475 (1975), Telford v. Hepting, 980 F.2d 745, 748 (3d Cir.), cert. denied 510 U.S. 920 (1993). Habeas corpus review allows a prisoner to challenge the execution of his sentence." Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 241 (3d Cir. 2005). Review is available "where the deprivation of rights is such that it necessarily impacts the fact or length of detention." Leamer v. Fauver, 288 F.3d 532, 540 (3d Cir. 2002).

Accordingly, to the extent that Gibson is seeking immediate or earlier release from confinement and/or challenging the legality of a prison disciplinary proceeding which directly extended the duration of his ongoing confinement, such requests for injunctive relief are not properly asserted in a civil rights complaint under the standards announced in Preiser and Leamer. See generally Georgevich v. Strauss, 772 F.2d 1078, 1086 (3d Cir. 1985) (civil rights claims seeking release from confinement sound in habeas corpus). Likewise, a civil rights claim for declaratory relief "based on allegations ... that necessarily imply the invalidity of the punishment imposed, is not cognizable" in a § 1983 civil rights action.

Edwards v. Balisok, 520 U.S. 641, 646 (1997).

Pursuant to the above discussion, the claims set forth in the Complaint are not properly asserted in a federal civil rights action.  Rather, if Plaintiff wishes to attack the fact or duration of his ongoing Pennsylvania state confinement, his appropriate federal court remedy would be to seek federal habeas corpus relief. See Leamer, 288 F.3d at 540.

**Deputy Superintendent Vuksta**

Other than listing him as a Defendant Gibson does not set forth any factual assertions whatsoever against Deputy Superintendent Vuksta.  A plaintiff, in order to state a viable civil rights claim, must plead two essential elements:  (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Civil rights claims brought cannot be premised on a theory of respondeat superior.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences giving rise to the assertion of

constitutional misconduct.. See Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Clearly, Defendant Vuksta was employed in a supervisory capacity at SCI-Mahanoy. There is no allegation that the Deputy Superintendent had any personal involvement whatsoever in any violation of Plaintiff's constitutional rights. Likewise, there are no factual assertions set forth in the Complaint which could establish that the Vuksta directed or acquiesced in any violation of Gibson's rights. Based upon the standards announced in Rode, the Deputy Superintendent is clearly entitled to entry of dismissal since it is apparent Plaintiff is attempting to establish liability against him solely on the basis of his supervisory capacity.

It is also possible that Gibson may be trying to establish liability against Defendant Vuksta due to his responses or non-response to his administrative grievances or complaints. Prisoners have no constitutionally protected right to a grievance procedure. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977)(Burger, C.J., concurring) ("I do not suggest that the

6

[grievance] procedures are constitutionally mandated."); Speight v. Sims, 283 Fed. Appx. 880, 881 (3d. Cir. 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")

While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts which is not compromised by the failure of prison officials to address an inmate's grievance. See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure). Pursuant to those decisions, any attempt by Plaintiff to establish liability against Deputy Superintendent Vuksta based upon his handling of Gibson's administrative appeals or complaints does not support a constitutional claim. See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). Pursuant to the above discussion, Defendant Vuksta is also entitled to entry of dismissal on the basis of lack of personal

involvement.

**<u>Due Process</u>**

With respect to the denial of due process claims against Hearing Examiner Hex, the Fourteenth Amendment of the United States Constitution provides in pertinent part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."  The United States Supreme Court has mandated a two-part analysis of a procedural due process claim:  first, "whether the asserted individual interests are encompassed within the . . . protection of 'life, liberty or property[,]'" and second, "if protected interests are implicated, we then must decide what procedures constitute 'due process of law.'"  <u>Ingraham v. Wright</u>, 430 U.S. 651, 672 (1977).  If there is no protected liberty or property interest, it is obviously unnecessary to analyze what procedures were followed when an alleged deprivation of an interest occurred.

Liberty interests protected by the Fourteenth Amendment may arise either from the Due Process Clause itself or from state law.  <u>Meachum v. Fano</u>, 427 U.S. 215, 223-26 (1976).  In <u>Wolff v. McDonnell</u>, 418 U.S. 539, 563-73 (1974), the Supreme Court recognized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." <u>Id</u>. at 556.  Nonetheless, the Supreme Court held

that a prisoner facing serious institutional sanctions is entitled to some procedural protection before penalties can be imposed. Id. at 563-71. The Supreme Court set forth five requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. Id. An additional procedural requirement was set forth in Superintendent, Massachusetts Correctional Inst. at Walpole v. Hill, 472 U.S. 445, 453-56 (1985). In Hill, the Supreme Court held that there must be some evidence which supports the conclusion of the disciplinary tribunal.

  In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court reiterated that the due process safeguards set forth in Wolff must be provided when the challenged disciplinary proceeding results in a loss of good time credits. However, as discussed earlier herein there is no assertion by Gibson that he was subjected to a loss of good conduct time. Moreover, an inmate challenging the

legality of a misconduct proceeding which resulted in a loss of good conduct time must pursue such claims for injunctive relief via a federal habeas corpus proceeding.

Sandin focused the liberty interest analysis from one "based on the language of a particular regulation" to "the nature of the deprivation" experienced by the prisoner. Id. at 481. In Sandin the Supreme Court reasoned, inter alia, that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence. Id. at 485. The nature of an inmate's confinement in disciplinary segregation was found similar to that of inmates in administrative segregation and protective custody at his prison. Id. at 486.

Focusing on the nature of the punishment instead of on the words of any regulation, the Supreme Court held that the procedural protections in Wolff were inapplicable because the "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Id. The Court examined the nature of disciplinary segregation and found that "[b]ased on a comparison between inmates inside and outside disciplinary segregation, the State's actions in placing him there for 30 days did not work a major disruption in his environment." Id. In the final holding of the opinion, the Court stated that neither the state prison regulation in question, nor

10

the <u>Due Process Clause itself</u>, afforded a protected liberty interest that would entitle state prisoners to the procedural protections set forth in <u>Wolff</u>." <u>See id</u>. at 487 (emphasis added).[3]

Thus, if the disciplinary hearing being challenged herein did not result in a loss of good conduct time or any other sanction which adversely affected the duration of Gibson's confinement, any attempt by Plaintiff to pursue a due process claim against Defendant Hex based upon actions taken during the hearing does not set forth a viable due process claim.  In conclusion, regardless of what disciplinary sanctions were imposed, Defendant Hex is entitled to entry of dismissal with respect to this civil rights action.

Finally, since Plaintiff acknowledges that he committed the misconduct charged by Correctional Officer Smith there is no discernible basis for liability against said Defendant.  The fact that the officer allegedly elected not to charge the other prisoner involved in the incident simply does not set a claim that Gibson's constitutional rights were violated.

---

3.   The <u>Sandin</u> Court relied on three factors in making this determination: (1) confinement in disciplinary segregation mirrored conditions of administrative segregation and other forms of discretionary confinement; (2) based on a     comparison between inmates inside and outside segregation, the state's action in placing the inmate there did not work a major disruption in the inmate's environment; and (3) the state's action did not inevitably affect the duration of inmate's sentence.

Since Plaintiff's pending civil rights claims are "based on an indisputably meritless legal theory" they will be dismissed, without prejudice, as legally frivolous.  <u>Wilson</u>, 878 F.2d at 774 .   An appropriate Order will enter.


                              BY THE COURT:


                              <u>  s/ Matthew W. Brann          </u>
                              Matthew W. Brann
                              United States District Judge